UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Pablo Loja Lema

     v.                                        Case No. 1:25-cv-386-JL-TSM
                                                Opinion No. 2025 DNH 127P

FCI Berlin, Warden, et. al.

**ORDER TO CONDUCT BOND**
**HEARING IN IMMIGRATION COURT**

This case concerns the government's authority to hold a non-citizen pending removal proceedings. Petitioner Pablo Loja Lema, a citizen of Ecuador, is in ICE custody at FCI Berlin Facility in Berlin, New Hampshire. The respondents assert that he is detained under 8 U.S.C. § 1225(b)(2)(A), even though he has been living in the United States for over 10 years and was released on bond after his first detention, soon after entering the country in 2013. Loja asks the court to order an individualized custody redetermination hearing[1] by an Immigration Court under 28 U.S.C. § 2241 (habeas corpus).

This court has jurisdiction under 28 U.S.C. §§ 1331 and 2241 (federal question and habeas corpus). For the reasons stated below, the court grants partial habeas relief by ordering a bond hearing before an Immigration Court.

**I.    Background**

Loja is a citizen and national of Ecuador, currently detained at FCI Belin. He entered the United States without documentation in February 2013 near McAllen, Texas,

---

[1] Also known as a "bond hearing." The court will use the term "bond hearing" throughout this order.

where he was detained by Customs and Border Patrol (CBP) agents under 8 U.S.C. § 1225.[2]  CBP initially issued Loja an Expedited Removal order but in March 2013 an asylum officer determined that he had a credible fear of returning to Ecuador.[3]  The United States Citizenship and Immigration Service issued Loja a Notice to Appear, which vacated the Expedited Removal order, and charged him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i).[4]  On April 11, 2013, DHS released Loja on "bond conditioned upon the delivery of an alien…as authorized by Section 236" of the Immigration and Nationality Act,[5] codified at 8 U.S.C. § 1226.  He settled in Massachusetts in 2013, where he has lived for over 10 years.  An Immigration Court ordered Loja removed in absentia in early 2014, but two months later granted a motion to re-open his proceedings.[6]  In October 2023, without any further detention or apparent activity in his case, an Immigration Court dismissed Loja's case without prejudice.[7]  Nothing in the record suggests that Loja failed to comply with any condition of his bond.

Two years later, the Hopedale Police Department in Hopedale, Massachusetts arrested Loja on an outstanding warrant for operating a motor vehicle without insurance.[8]  After the Hopedale Police Department released him, ICE immediately detained him "pursuant to sections 236 and 287 of the Immigration and Nationality Act."[9]  At the same

---

[2] Chan Decl. (doc. no. 6-1) at ¶ 7.
[3] Id. at ¶¶ 8-10.
[4] Id. at ¶ 11.
[5] Immigration Bond, ICE Form I-352 (doc. no. 11-2) at 2.
[6] Tetreault Aff. (doc. no. 1-1) at ¶ 4.
[7] Chan Decl. (doc. no. 6-1) at ¶ 13.
[8] Id. at ¶ 14.
[9] Arrest Warrant (doc. no. 6-2) at 1; Tetreault Aff. (doc. no. 1-1) at ¶ 5.

time, on September 2, 2025, DHS issued Loja a Notice to Appear in Immigration Court for "removal proceedings under section 240 of the Immigration and Nationality Act," 8 U.S.C. § 1229a, on which it had marked a box indicating that Loja is subject to removal because he is "an alien present in the United States who has not been admitted or paroled."[10]  DHS specifically did not mark the available box to indicate that Loja was an "arriving alien."  It also issued him a Record of Deportable/Inadmissible Alien which repeatedly identifies another person, not Loja, throughout the document.[11]

Loja requested a bond hearing before an Immigration Court.  The respondents argued there, as they do here, that Loja is subject to mandatory detention under § 1225(b) because he is an "applicant for admission."[12]  The Immigration Court denied jurisdiction, finding that Loja was "statutorily ineligible for IJ custody redetermination."[13]

Loja filed a petition with this court in early October 2025.  The court requested documents related to Loja's current detention, information regarding any immigration proceedings or change of status that took place between the March 2014 re-opening of his removal proceedings and his September 2, 2025 arrest, and information related to his release from detention in 2013.  The petitioner provided the requested documents without any objection from the respondents.[14]

---

[10] Notice to Appear (doc. no. 4-3) at 1.
[11] Record of Deportable Alien (doc. no. 4-1) at 7-9.
[12] DHS Notice of Ineligibility for Bond (doc. no. 4-1) at 3-4; *see also* Opp. Pet. Habeas Corpus (doc. no. 6) at 1-2.
[13] Order of Immigration Judge, Sep. 23, 2025 (doc. no. 4-1) at 1.
[14] The petitioner did not provide additional information regarding immigration proceedings or change of status that took place between the March 2014 re-opening of his removal proceedings and his September 2, 2025 arrest, presumably because, other than the 2023 dismissal of his immigration case, there were no other changes.  *See* Chan Decl. (doc. no. 6-1) at ¶ 13.

**II.    Ruling and Order**

DHS originally detained Loja near McAllen, Texas, in February 2013. Two months later DHS released him on bond under § 1226(a), after which Loja settled in Massachusetts with his family.[15] With no changes to his immigration status in the intervening years, DHS re-detained Loja on September 2, 2025. In a factually similar case, *De Andrade v. Moniz*, in which DHS detained a non-citizen close to the border under § 1225(b), released him under § 1226(a), and years later re-detained him, Judge Saylor in the District of Massachusetts found that, by releasing the non-citizen under § 1226, "the government failed to reserve its right to treat petitioner 'in the same manner as that of any other applicant for admission to the United States.'" No. 25-CV-12455-FDS, 2025 WL 2841844 at * 5 (D. Mass. Oct. 7, 2025) (Saylor, J.) (quoting 8 U.S.C. § 1182(d)(5)(A) (humanitarian parole)). In *De Andrade*, the non-citizen was originally released on conditional parole, but the court sees no reason to distinguish release on conditional parole under § 1226(a)(2)(B) from release on bond under § 1226(a)(2)(A), and the respondents offer none. Adopting the same approach here, the court finds that by releasing Loja on bond under § 1226(a), rather than humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), the government failed to reserve its right to treat Loja "in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).[16] "Congress provided a mechanism for paroling applicants for

---

[15] Immigration Bond, ICE Form I-352 (doc. no. 11-2) at 2.
[16] DHS's "Notice of [Loja's] Ineligibility for Bond" specifically notes that non-citizens who have been paroled under 8 U.S.C. § 1182(d)(5)(A) (humanitarian parole) should be treated as "applicants for admission" who are "legally in the position of aliens standing at the border,

4

admission into the United States without changing their status [namely, humanitarian parole]. The government elected not to use that mechanism. It cannot now turn back the clock, and neither can the Court." *De Andrade*, 2025 WL 2841844 at *6 (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (holding that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Loja was also given apparent notice, based on his warrant and Notice to Appear, that his current detention fell under § 1226, not § 1225.[17] Courts considering factually similar cases have found that aliens without criminal convictions, who are already in the country, have been taken into custody under 8 U.S.C. § 1226, are specifically described in charging documents as "alien[s] present in the United States who ha[ve] not been admitted or paroled," and are in removal proceedings, are detained under 8 U.S.C. § 1226.[18]  *See, e.g.*, *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988 (D.

---

regardless of the duration of their parole." Doc. no. 4-1 at 4 n.1.  DHS recognizes that Loja was not granted humanitarian parole, but does not address the fact that he was granted bond, arguably "extinguish[ing] the legal fiction that a non-citizen who is physically present in the United States has, in fact, not effected an entry into the United States." *De Andrade*, 2025 WL 2841844 at *5.
[17] Arrest Warrant (doc. no. 6-2) at 1; Notice to Appear (doc. no. 4-3) at 1.
[18] The court recognizes but, under the circumstances present here, does not defer to new BIA precedent, *Matter of Yajure Hurtado*, 29 I. & N. Dec 216 (B.I.A. 2025), which adopted the position that noncitizens present in the United States without admission are "seeking admission" for purposes of § 1225(b)(2), and are therefore subject to the mandatory detention procedures set forth in § 1225.  See *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("[C]ourts must exercise independent judgment in determining the meaning of statutory provisions," and they "may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Mass. Aug. 14, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-CV-326-LM-AJ, 2025 WL 2639390 (D.N.H. Sept. 8, 2025) (McCafferty, C.J.); *see also Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *1 (D. Mass. Aug. 19, 2025) (gathering cases). Without adopting, at this juncture, the interpretive reasoning of these cases, given the lack of Supreme Court or First Circuit authority on the basic question of whether aliens in the petitioner's position are held under § 1225 or § 1226, the court believes that in this case, given Loja's decade-long release on bond under § 1226(a) and the apparent notice given to him by his charging documents that he was held under §1226(a), a bond hearing is the course of action most consistent with the requirements of due process.

The respondents are therefore ORDERED to provide Loja with a bond hearing as soon as practicable to allow the Immigration Court to reconsider his request for release.[19]

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

Dated: November 4, 2025

cc: Counsel of Record

---

[19] As in *Neto v. Warden, FCI Berlin*, No. 25-cv-311-JL, Order (doc. no. 14) at *4 n.10 (D.N.H. Oct. 2, 2025) the court requests, but does not order, the Immigration Court to consider the merits of Loja's request for release under 8 U.S.C. § 1226(a), based on the due process considerations noted above.